STEPHEN BOOTHBY *versus* INHABITANTS OF TROY.

An action brought against a town, by a non-resident physician, for professional services rendered to a destitute person, who had a legal settlement therein, cannot be maintained by proof that one of the overseers of the poor consented that such services might be rendered and charged to the town, unless it be further proved that this was assented to by a majority of the board, or that the town has, in some way, ratified the act of the individual overseer.

EXCEPTIONS from the ruling of DAVIS, J.

The plaintiff, an inhabitant of the town of Unity, brought an action to recover of the defendants, for services rendered as a physician, to a sick and destitute person, who was then living, and had a legal settlement, in the defendant town.

At *Nisi Prius*, the presiding Judge ruled that, upon the testimony introduced for plaintiff, on the trial, his action was not maintained; and directed a nonsuit. To this, the plaintiff excepted.

The exceptions were argued by

*Dickerson,* for the plaintiff, and by

*N. Abbott,* for the defendants.

The material testimony is stated in the opinion of the Court, which was drawn up by

TENNEY, C. J. — The plaintiff, not being an inhabitant of the town of Troy, cannot recover in this action, under the provisions of R. S. of 1841, c. 32, § 48, after notice and request made to the overseers of the poor.

The action is sought to be maintained by virtue of the contract between the plaintiff and the defendants. He testified that he visited the pauper, Harriet Davis, on April 26, 1856, as a physician, and that he prescribed for her; that, on May 19, 1856, he called upon E. W. Bennett, one of the overseers of the poor of the town of Troy, and informed him that he was doctoring the Davis girl, and, if he doctored her any more, he should expect the town to pay him; to which Bennett replied, " if she needs it, tend to her, and they will."

Robert Woodhouse, another of the board of overseers for that year, testified that, after the board had let out the standing poor of the town, at that time, the overseers agreed among themselves that each one should look out for the poor in his own part of the town, and furnish any temporary supplies for small amounts, that might be necessary, in all such cases as they should be willing to take the responsibility for; that Bennett lived in the section of the town nearest to Harriet Davis, the pauper; that, in accordance with this arrangement, orders had been drawn and signed by the board, for small sums, in two instances, for supplies to other paupers, furnished by direction of one of the overseers alone. But, by the arrangement stated by the witness, the overseers did not surrender the right to act in all cases; and, in all instances, where one did not wish to take the responsibility, it was expected that he would consult the others; that he had no knowledge that the plaintiff was visiting the Davis family, and

that he gave Bennett no authority to employ the plaintiff, unless it resulted from the arrangement spoken of. No evidence was adduced to show that the third overseer had any knowledge of the employment of the plaintiff by Bennett. The plaintiff's charges, annexed to the writ, for services and medicine for Harriet Davis, commence on April 21, 1856, and continue, with short intervals between them, to July 25, 1857, inclusive, amounting to the sum of $57,60. The employment of the plaintiff by Bennett, if it was done, was in no way ratified by either of the other overseers afterwards, or by the town.

By R. S. of 1841, c. 1, § 4, rule III, " words giving authority to three or more persons, authorize a majority to act." This clearly implies that less than a majority can do no binding act; consequently, the doings of the minority can have no effect to make responsible those for whom it professes to act.

The defendants cannot be treated, in this case, as having made any contract with the plaintiff which creates any liability. *Exceptions overruled.*

APPLETON, CUTTING, MAY, DAVIS and KENT, JJ., concurred.